**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

**FILED**

2008 Nov 10 PM 04:08

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 06-31501 |
| | ) | |
| Tilton Corporation, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 08-3138 |
| | ) | |
| William L. Swope, Trustee, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Main Line Supply Co., Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OF DECISION REGARDING
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on Defendant's unopposed motion for summary judgment [Doc. # 9]. The Trustee seeks to recover, as preferential transfers, seven payments totaling $26,463.38 that were made to Defendant by Debtor within ninety days before the date Debtor's involuntary Chapter 7 bankruptcy petition was filed.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as

a civil proceeding arising in or related to a case under Title 11.  This proceeding has been referred to this court by the district court under its general order of reference.  28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio.  Proceedings to recover preferences are core proceedings that the court may hear and decide.  28 U.S.C. § 157(b)(1) and (b)(2)(F).  For the reasons that follow, Defendant's motion will be granted.

## FACTUAL BACKGROUND

The following facts are undisputed.  On June 21, 2006, an involuntary bankruptcy case was commenced against Debtor under Chapter 7 of the Bankruptcy Code.  Before this time, Debtor and Defendant had an ongoing business relationship in which Debtor regularly purchased supplies from Defendant from as early as August 2004.  Debtor made regular payments to Defendant by grouping invoices received from Defendant over a period of time and then issuing one check for those invoices. [*See* Post Aff., Ex. 1].  During the ninety-day period before Debtor's bankruptcy case was commenced, with one exception,[1] Debtor paid invoices between 28 and 56 days after the date of the invoice.  [*Id.* at pp. 10-12].  Similarly, during the nine months before this ninety-day period, Debtor paid invoices between 27 and 55 days after the date of the invoice.[2] [*Id.* at pp. 7-10].

Debtor's payments during the ninety days before the commencement of its bankruptcy case were made on the following dates and in the following amounts:

| | |
|---|---|
| March 24, 2006 | $2,803.11 |
| March 28, 2006 | 4,143.50 |
| March 31, 2006 | 4,104.14 |
| April 7, 2006 | 543.42 |
| April 28, 2006 | 4,464.85 |
| May 2, 2006 | 10,212.05 |
| May 10, 2006 | 192.31 |
| Total | $26,463.38 |

[Complaint, ¶ 5 & Ex. A; Answer, ¶ 3].

Defendant also shipped product on numerous occasions to Defendant between March 24, 2006, and

---

[1] The one exception was a payment of $127.18 on May 10, 2006, for two invoices dated May 1, 2006.  [*See* Post Aff., Ex. 1, p. 26].

[2] Although Jeffrey Post, Defendant's account manager, avers in his affidavit that the invoices were regularly paid within 40-60 days of the date of the invoice, [Post Aff. ¶ 5], the record of Debtor's payment history attached to the affidavit indicates the timing stated above, [*Id.*, Ex. 1, pp. 7-12].

2

July 31, 2006, for which it was not paid. [Post Aff. ¶ 7]. Those shipments totaled $29,601.70. [*Id.,* Ex. 1, pp. 27-28 ] . Specifically, shipments made on March 27, 2006, totaled $151.60; shipments made between March 29 and March 31 totaled $1,547.04; shipments made between April 3 and April 7 totaled $4,838.43; shipments made between April 10 and April 18 totaled $3,181.24; shipments made between April 19 and May 2 totaled $11,295.87; shipments made between May 3 and May 10 totaled $8,315.76; and a shipment on May 23 in the amount of $212.64 and on July 31 in the amount of $59.12.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Bankr. P. 7056, summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.* Although a party fails to respond to a motion for summary judgment, the court must nevertheless satisfy itself that the moving party has met the demands of Fed. R. Civ. P. 56 before granting the motion. *See Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).

### II. Preferential Transfers under 11 U.S.C. § 547[3]

The Trustee seeks to avoid prepetition transfers to Defendant as preferences under 11 U.S.C. § 547(b), which provides as follows:

---

[3] Section 547 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("the Act"), effective October 17, 2005. Because Plaintiff's bankruptcy case was filed after the effective date of the Act, the amended version of that section is applicable.

3

> Except as provided in subsection (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made–
> > (A) on or within 90 days before the date of the filing of the petition; . . .
> (5) that enables such creditor to receive more than such creditor would receive if–
> > (A) the case were a case under chapter 7 of this title;
> > (B) the transfer had not been made; and
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

While § 547(b) authorizes a trustee to avoid certain prepetition transfers, the Bankruptcy Code excepts from avoidance the types of transfers described in § 547(c), including transfers made in the ordinary course of business or transfers to the extent that the creditor subsequently advanced new value to the debtor. 11 U.S.C. § 547(c)(2) and (4). The Trustee has the burden of proving all five of the elements making a transfer avoidable under § 547(b); however, the party against whom recovery or avoidance is sought has the burden of proving that a transfer is not avoidable under one of the affirmative defenses of § 547(c). 11 U.S.C. § 547(g).

The evidence in this case clearly indicates, and Defendant does not dispute, that it is a creditor of Debtor, that the three transfers in issue were made within ninety days before the bankruptcy petition was filed, and that each transfer was on account of an antecedent debt. Although the Trustee must also prove that Debtor made the transfers in issue while it was insolvent, there is a statutory presumption of insolvency during the ninety days immediately preceding the filing of bankruptcy. 11 U.S.C. § 547(f). Defendant offers no evidence to rebut that statutory presumption. *See* (*In re Oakes*, 7 F.3d 234 (Table), 1993 WL 339725, *2 (6th Cir. Sept. 3, 1993) (citing *In re Sierra Steel, Inc.,* 96 B.R. 275, 277 (B.A.P. 9th Cir. 1989) and explaining that the presumption vanishes only after transferee comes forward with substantial evidence of solvency). Thus, there is no dispute that all transfers made to Defendant during the ninety days prior to the filing of the bankruptcy petition were made while Debtor was insolvent. However, the Trustee has offered no evidence of the final element of his preference claim, that is, that Defendant received more than it would have received had the transfers not been made and it received its pro rata share of the property of

4

the estate under Chapter 7. While on that basis alone Defendant is entitled to summary judgment on the Trustee's preference claim, it has also satisfied its burden of proving that the transfers at issue are not avoidable under § 547(c)(2). Although this is a complete defense to the Trustee's claim, Defendant has also proven a partial defense of subsequent new value under § 547(c)(4).

Section 547(c)(2) provides, in relevant part, that a trustee may not avoid a transfer "to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was– (A) made in the ordinary course of business or financial affairs of the debtor and the transferee. . . ." This exception was intended to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." *Union Bank v. Wolas*, 502 U.S. 151, 160 (1991); *Waldschmidt v. Ranier & Assocs. (In re Fulghum Constr. Corp.)*, 872 F.2d 739, 743 (6th Cir. 1989).

There is no dispute that the payments at issue were made in payment of debts incurred by Debtor in the ordinary course of its business with Defendant. Defendant had regularly supplied product to Debtor for at least two years before Debtor's bankruptcy case was commenced. And the record of Debtor's payment history as set forth above shows no significant change in the timing and manner in which the payments at issue were made. Rather, the payments were made in the ordinary course of the business affairs of Debtor and Defendant as provided by § 547(c)(2)(A)[4] and, as such, are not transfers that may be avoided under § 547(b).

Defendant has also satisfied its burden of proving a partial subsequent new value defense under § 547(c)(4). That section provides that a trustee may not avoid a transfer made

> to or for the benefit of a creditor, to the extent that, after such a transfer, such creditor gave new value to or for the benefit of the debtor –
> (A) not secured by an otherwise unavoidable security interest; and
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

---

[4]Prior to amendment of § 547(c)(2) by the Act, preference defendants had to prove both that a transfer was made in the ordinary course of the business affairs of the parties under what was then subpart (B), a subjective inquiry as to dealings between the parties, and that it was made according to ordinary business terms under what was then subpart (C), an objective inquiry as to the prevailing credit and payment standards in the relevant industry. *Logan v. Basic Distribution Corp. (In re Fred Hawes Organization, Inc.)*, 957 F.2d 239, 243-44 (6th Cir. 1992). The Act changed the "and" between the subparts to "or." Under the Act preference defendants may now prevail by proving that the debt was incurred in the ordinary course of business of the parties and either current subpart (A) or current subpart (B), but need not prove both subpart (A) and subpart (B).

5

11 U.S.C. § 547(c)(4). This section, known as the subsequent advance rule, requires a creditor to prove two elements: (1) that the creditor gave unsecured new value *after* the preferential transfer, and (2) the debtor has not made an otherwise unavoidable transfer to the creditor in payment of the new value provided. *See Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d 228, 231-32 (9th Cir. 1995).

In this case, it is undisputed that Defendant shipped product to Debtor between March 27, 2006 and May 23, 2006, that totaled $29,542.58 and for which no payments have ever been made.[5] The value of these prepetition shipments represents new value received by Debtor after each of the payments made during the ninety-day preference period. And according to the bankruptcy schedules filed in this case, the debt owed to Defendant is an unsecured debt. [Case No. 06-31501, Doc. # 191, Schedule F].[6] However, Defendant is entitled to offset such new value only against payments made by Debtor that occurred before the new value was provided. *See Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 315 B.R. 443, 472 (Bankr. S.D. Ohio 2004). Applying the new value provided by Defendant in this manner, payments made between March 24, 2006, and April 18, 2006, may not be avoided since sufficient new value was provided to entirely offset those payments. However, prepetition new value provided by Defendant after May 2, 2006, totaled only $8,528.40, which, when offset against Debtor's May 2 payment of $10,212.05 and its May 10 payment of $192.31, leaves $1,875.97 that could have been avoided absent Defendant's ordinary course of business defense.

There being no genuine issue of material fact, for the foregoing reasons, Defendant is entitled to summary judgment in its favor on the Trustee's preference claim. A separate final judgment conforming to this memorandum of decision and order will be entered by the court.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendant's motion for summary judgment [Doc. # 9] be, and hereby is, **GRANTED.**

---

[5] Although Defendant also shipped product with a value of $59.12 to Debtor on July 31, 2006, the court has excluded this in its subsequent new value calculation since this shipment occurred after the commencement of Debtor's bankruptcy case. Postpetition new value may not be applied to offset preferential transfers. *Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1284 (8th Cir. 1988); *TennOhio Transp. Co. v. Felco Commercial Svcs. (In reTennOhio Transp. Co.)*, 255 B.R. 307, 310 (Bankr. S.D. Ohio 2000).

[6] The court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).